UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

---

MARK SPECKMAN
121 E. Water Street, #316
Appleton, WI 54911,

      Plaintiff,

                   Case No.

vs.

STATE OF WISCONSIN DEPARTMENT OF
TRANSPORTATION, an agency of the State
of Wisconsin
Hill Farms State Transportation Building
4802 Sheboygan Avenue
Madison, WI 53705,

and

MARK GOTTLIEB, in his official capacity
as Secretary of the Wisconsin Department of
Transportation
Hill Farms State Transportation Building
4802 Sheboygan Avenue
Madison, WI 53705,

      Defendants.

---

## COMPLAINT

---

Plaintiff, Mark Speckman, by and through his attorneys, Gill & Gill, S.C., for his Complaint against Defendants, alleges as follows:

### INTRODUCTIION

1. This action arises under Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794. Plaintiff has a physical disability under the ADA and

1

the Rehabilitation Act, as he was born without hands. During August of 2015 and continuing thereafter, Defendants intentionally refused to issue Plaintiff a motor vehicle operating license on the same terms as non-disabled drivers, solely based upon his disability and despite the fact that Plaintiff had been driving for 44 years under a California motor vehicle operating license without any blemish on his driving record and without the use of any mechanical assistance. Persons without a disability and with such an out of state driver's license are always issued Wisconsin licenses without any testing by the State of Wisconsin Department of Transportation. Defendants, acting with deliberate indifference to Plaintiff's disability, at times refused to issue him a driver's license under any circumstances. At other times, the Defendants required him to take and pass a full driver's license road examination and demand that he pass tests for matters wholly unrelated to his disability. Eventually the Defendants issued Plaintiff a Wisconsin driver's license but after requiring him to take and pass a full road test instead of testing him solely to determine if his disability prevented him from exercising reasonable and ordinary control of a motor vehicle. At all times relevant to this Complaint, the Plaintiff was not only capable of exercising such reasonable and ordinary control but repeatedly demonstrated same to the Defendants.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. §12133 and 28 U.S.C. §1331.

3. Venue is proper in the Eastern District of Wisconsin pursuant to 28 U.S.C. §1391

in that a substantial part of the events giving rise to this action occurred in that district.

**PARTIES**

4. Plaintiff Mark Speckman is an individual residing in the State of Wisconsin, County of Outagamie, City of Appleton.

5. Defendant, State of Wisconsin Department of Transportation ("WisDOT") is an administrative agency of the State of Wisconsin, and its principal place of business is located at Hill Farms State Transportation Building, 4802 Sheboygan Avenue, Madison, WI 53705. WisDOT is the agency responsible for the administration of Wisconsin's system for the approval and denial of motor vehicle operator's licenses, and WisDot has adopted, and enforces, rules for the evaluation of applicants with physical disabilities. This defendant is also the recipient of federal funds, which are used in part for its construction and administrative expenses.

6. Defendant Mark Gottlieb, Secretary of WisDOT, is that agency's chief executive officer. He is responsible for the administration, operations, and activities of WisDOT and its various divisions. Secretary Gottlieb maintains his office at Hill Farms State Transportation Building, 4802 Sheboygan Avenue, Madison, WI 53705. He is sued in his official capacity only.

**GENERAL ALLEGATIONS**

7. Plaintiff has a "disability" under the ADA in that he was born without hands. He has adapted to this disability, and has been fully capable of maintaining reasonable and ordinary control over a motor vehicle since he was 16 years of age

3

without any type of accommodation.

8. At that time, age 16 years, Plaintiff was issued an <u>unrestricted</u> (other than glasses) motor vehicle operator's license by the State of California. Plaintiff, at all times relevant to this Complaint was able to exercise reasonable and ordinary control of a motor vehicle.

9. For 44 years, Plaintiff has operated motor vehicles in the State of California and elsewhere, including the State of Wisconsin, under his unrestricted California license.

10. In 2015, Plaintiff moved to Wisconsin to take a position as offensive coordinator for the football team at Lawrence University in Appleton, Wisconsin. Upon moving to Wisconsin, Plaintiff and his wife, in August of 2015, applied for Wisconsin driver's licenses at the WisDOT office in Appleton.

11. Plaintiff's wife, Susan Speckman, who is not disabled, was immediately issued a license without any testing simply by presenting her California driver's license and proof of residency.

12. Plaintiff, however, was refused a license by the Appleton WisDOT supervisor solely because he has no hands even though he also provided his California driver's license and proof of residency.

13. After he was refused a license by the Appleton WisDOT supervisor in August of 2015, Plaintiff then, also in August of 2015, traveled to the Green Bay WisDOT and the Oshkosh WisDOT's offices and unsuccessfully tried to obtain a driver's license at these locations as well.

14. At all of these locations he was treated rudely and, as stated, was also refused a

4

driver's license.

15. At all three locations the Plaintiff demanded to have the decision to refuse to issue his license appealed to the most senior supervisory official available.

16. However, each time his appeal was denied. He was never given a written explanation as to why he was denied.

17. Each location had a different process that was employed in order to review Plaintiff's license eligibility.

18. None of the locations complied with the requirements of Wis. Stats. section 343.16, because: a) No location gave him a written explanation stating why he was refused a license; b) No location gave him a special examination related to his disability to determine if his disability prevented him from exercising reasonable and ordinary control over a motor vehicle; c) All locations announced their decision not to issue a license in front of members of the general public and thus violated the confidentiality provisions of Wis. Stats. Section 343.16; and d) None of the locations used a uniform approach other than to look at him, conclude he had no hands and decided simply because he had no hands that he could not have a license.

19. The Oshkosh WisDOT office told Plaintiff he could not be considered for a license application until he had a doctor fill out a medical form. This medical form which was to be filled out by a doctor inquired, among other things, about whether or not the Plaintiff had heart problems. The form did not address his disability (no hands).

20. Plaintiff was subsequently called back several days later, via telephone, by a

5

Case 1:16-cv-00561-WCG   Filed 05/09/16   Page 5 of 12   Document 1

WisDOT official while at the Green Bay office and told he now did not need to have the medical form but that the decision to give him a license was up to the Green Bay WisDOT supervisor.

21. The Green Bay WisDOT supervisor simply looked at Plaintiff, said in front of members of the general public, "No license.", turned his back on Plaintiff and walked away.

22. The Appleton WisDOT desk clerk also initially told Plaintiff he could not have a license.

23. This person from the Appleton office also rudely and loudly said in front of the general public, "I won't honor your out-of-state license because you have no hands." But later that day, a supervisor from the Appleton office told him he could be given a license if he passed a test to see if he could "control the vehicle."

24. However, when he was given the test by that location, which was in Appleton, he was not tested to determine if his disability prevented him from exercising reasonable and ordinary control of a motor vehicle but rather he was given and required to pass complete road tests which included testing him for matters unrelated whether the absence of hands prevented Plaintiff from exercising ordinary and reasonable control of the vehicle.

25. The Plaintiff that same day passed that part of the road test relating to safely controlling the vehicle but he was still denied a license because he did not pass some portions of this test which were unrelated to his ability to exercise ordinary and reasonable control of the vehicle despite the lack of hands.

26. The Plaintiff agreed to the test only because he was told by the Appleton

6

Case 1:16-cv-00561-WCG   Filed 05/09/16   Page 6 of 12   Document 1

supervisor he simply needed to prove he could exercise reasonable and ordinary control of a vehicle.

27. However, after about 10 minutes of this "test," the examiner asked the Plaintiff to pull to the side of the road and park the car on a hill, which was one of a number of test items totally unrelated to proving he could exercise reasonable and ordinary control. The Plaintiff properly parked the car but then at that point, the examiner was asked by the Plaintiff, "what's these types of tests got to do with me not having hands?" She looked at him, refused to answer his question, and demanded that he immediately return to the WisDOT Appleton office.

28. Upon returning to the WisDOT Appleton office, the examiner went directly into the supervisor's office. After they consulted with each other in that office, the examiner came out and told the Plaintiff he had flunked the complete road test and therefore, they were refusing to issue him a license. Plaintiff then asked the examiner and supervisor if he could safely control the car. They did not answer him.

29. Plaintiff told the Appleton supervisor he never thought the road test was going to be for anything other than to test for steering (exercising ordinary and reasonable control not withstanding his disability). He told the supervisor that if he had known that the test was going to be for all other driving skills, totally unrelated to his disability, he would have objected.

30. The supervisor still refused to issue him a license, but did tell him, as stated below, that he could continue to drive under his California license, thus by this action, confirming Plaintiff could in fact exercise ordinary and reasonable control.

31. The various WisDOT supervisors who refused to issue Plaintiff a license also subjected Plaintiff to verbal insults in front of the general public by stating among other things, such things in from of the general public as, "You could not drive without hands" and "You remind me of all of the old people who say they are good drivers." One supervisor only looked at him, saw he had no hands, and loudly and publically proclaimed, "No license" and simply walked away.

32. At the completion of the first full road test represented herein, administered by the WisDOT Appleton office, the supervisor refused to issue Plaintiff a Wisconsin license solely because he failed that part of the test totally unrelated to his ability to exercise reasonable and ordinary control of the vehicle. However, as stated, Plaintiff passed, among other sections, that portion of the exam having to do with "maintaining safe steering control." In fact, his testing in that section resulted in a perfect score.

33. Plaintiff repeatedly asked to have his license denial reviewed by the highest office supervisor with authority at three different WisDOT locations authorized to issue such licenses. The Appleton WisDOT rudely and loudly announced in front of the general public that because he had no hands he could not have a license without passing a full road test. People who overheard this told his wife who was present that they were shocked at this rude treatment.

34. When Plaintiff subsequently went to the two other DMV locations (Oshkosh and Green Bay), and he was also refused a license, albeit for different reasons: Oshkosh demanded a medical approval form which called for medical information totally unrelated to Plaintiff's disability; Green Bay simply refused to

issue or test because he has no hands. When he asked the Green Bay supervisor to reverse the desk clerk's decision, he was denied. Plaintiff was told to make an appointment on another day to come back for a test but was not told why he needed to be tested or what he was to be tested upon.

35. Plaintiff appealed the Oshkosh WisDOT demand to fill out the aforementioned medical form to the WisDOT supervisor of the DMV's medical review and fitness unit, Steven Pazynski. Plaintiff told Pazynski the form was inappropriate. Pazynski's response was that the DMV couldn't rely on another state's license if the applicant was missing a limb. He was initially told he would not get a license application even considered without the form being completed.

36. Defendant Mark Gottlieb, was asked to reverse the refusal to issue the license and he was also asked for an explanation of the WisDOT policy that resulted in Plaintiff being denied a license at three different locations. Gottlieb refused to reverse the decision not to issue the license.

37. Defendants all refused to alter their decisions and continued to demand that Plaintiff must take and pass the full road test examination which included being tested for matters totally unrelated to whether he could use reasonable and ordinary control of a vehicle before he could be issued a license.

38. Plaintiff, under protest, eventually took the full road test a second time and passed this examination and was only then issued a license in December of 2015.

## COUNT ONE

## ADA VIOLATION

39. As and for his first cause of action against Defendants, Plaintiff repeats and

reallages the allegations of paragraphs 1 through 38 above, and further alleges as follows.

40. 42 U.S.C. section 12132 prohibits a public entity from discriminating against a qualified individual with a disability regarding the benefits of its services, programs or activities by reason of that disability. Plaintiff is a qualified individual with a disability as that term is defined in section 201(2) of the ADA [42 U.S.C. §12131(2)] in that he is fully capable of exercising reasonable control over his motor vehicle as demonstrated by his 44 years of driving.

41. WisDOT, a public entity, in violation of 42 U.S.C. section 12132, intentionally discriminated against Plaintiff with regard to his application for the benefit of the motor vehicle operating license services offered to residents of the State of Wisconsin.

42. The Wisconsin legislature, in Wis.Stat. §343.06(1)(e), authorized WisDOT to define when a person is so unable to exercise reasonable control over a motor vehicle as to justify denial of a license. WisDOT's adopted regulations are vague, permitting its employees to apply those regulations in a way that subjects qualified individuals with disabilities to discrimination on the basis of disability.

43. Defendants violated Title II of the ADA by first intentionally discriminating against Plaintiff by denying Plaintiff the benefits of its motor vehicle operating license program and by further intentionally discriminating against him on the basis of his disability by at times refusing to lawfully test and issue a license and at other times requiring him to take a test that was unnecessary to a determination of whether he could exercise reasonable and ordinary control over a motor

vehicle.

44. Plaintiff was injured as the direct result of Defendants' intentional discrimination, suffering inconvenience, damage to his reputation, public humiliation, emotional distress, loss of sleep and mental anguish.

## COUNT TWO

## REHABILITATION ACT

45. As and for his second cause of action against Defendants, Plaintiff repeats and realleges the allegations of paragraphs 1 through 44 above and further alleges as follows.

46. Defendant STATE OF WISCONSIN DEPARTMENT OF TRANSPORTATION is the recipient of federal funding.

47. Defendants have intentionally discriminated against Plaintiff in violation of the Rehabilitation Act, 29 U.S.C. §794.

48. Plaintiff was injured by reason of Defendants' discrimination, and he is entitled to an award of damages for his injuries.

WHEREFORE, Plaintiff requests the following relief:

1. Enjoining Defendants from keeping in effect their policy of mandating full testing of previously licensed drivers with disabilities for matters unrelated to their ability to safely control vehicles;

2. Awarding Plaintiff compensatory damages;

3. Awarding Plaintiff his costs and reasonable attorneys' fees as provided by the ADA, 42 U.S.C. sections 12188(a)(1); and 12205; and

4. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Trial by jury is demanded.

Dated in Appleton, Wisconsin this 9th day of May, 2016.

        **GILL & GILL, S.C.**

By: /s/ Gregory B. Gill, Sr.
     Gregory B. Gill, Sr.
     (State Bar No. 1015838)
     Attorneys for Plaintiff
     Gill & Gill, S.C.
     501 S. Nicolet Road
     Appleton, WI 54914
     Telephone: (920) 739-1107
     Facsimile: (920) 739-3027
     E-mail: gillsr@gillandgillsc.com